Case 2:18-cv-00045 Document 33 Filed on 06/06/19 in TXSD Page 1 of 20

United States District Court
Southern District of Texas
**ENTERED**
June 07, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ALFONZO WALLACE, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:18-CV-45 |
| | § | |
| PHILIP SIFUENTES, *et al*, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM AND RECOMMENDATION TO GRANT DEFENDANT PHILIP SIFUENTES' MOTION FOR SUMMARY JUDGMENT

In this prisoner civil rights action, Plaintiff Alfonzo Wallace claims that prison officials have acted with deliberate indifference to his health and safety by enforcing a clothing exchange policy at 4:00 a.m. that interferes with his ability to sleep. Pending before the Court is a Motion for Summary Judgment filed by Warden Philip Sifuentes. (D.E. 28). For the reasons stated herein, it is respectfully recommended that the Court grant Warden Sifuentes' summary judgment motion.

**I. JURISDICTION**

The Court has federal question jurisdiction over this civil action pursuant to 28 U.S.C. § 1331. This case was referred to the undersigned United States Magistrate Judge for case management and to furnish a recommendation pursuant to 28 U.S.C. § 636.

**II. PROCEDURAL BACKGROUND**

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID). Plaintiff is serving life sentences on each of his four

aggravated robbery convictions out of Dallas County, Texas. He was sentenced on three convictions on December 18, 1995 and the fourth conviction on March 1, 1996. Plaintiff's claims in this lawsuit occurred in connection with his current assignment to the McConnell Unit in Beeville, Texas.

On January 10, 2018, Plaintiff filed his original complaint, naming the following McConnell Unit and TDCJ officials as defendants: (1) Corey Furr, Assistant Warden; (2) Warden Sifuentes, Warden; (3) Fernandez, Assistant Warden; (4) P. Chapa, TDCJ Assistant Regional Director; and (5) Lorie Davis, TDCJ Director. Plaintiff alleges that Defendants were deliberately indifferent to his health and safety by changing the operating policy to require a necessities exchange at 3:30 a.m., thereby interfering in Plaintiff's ability to sleep. Plaintiff seeks injunctive relief in the form of implementing a new policy that allows for six to eight hours of uninterrupted sleep.

On March 23, 2018, a *Spears*[1] hearing was conducted. On April 9, 2018, the undersigned issued a Memorandum and Recommendation (M&R), recommending that: (1) Plaintiff's Eighth Amendment deliberate indifference claim seeking injunctive relief against Assistant Warden Furr be retained; and (2) Plaintiff's deliberate indifference claims against the remaining Defendants, all for injunctive relief, be dismissed. (D.E. 9). In a separate order, the undersigned directed service of Plaintiff's complaint on Assistant Warden Furr. (D.E. 10). On May 14, 2018, Senior United States District Judge Hilda G. Tagle adopted the M&R. (D.E. 11).

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

Assistant Warden Furr filed his answer on May 24, 2018. (D.E. 14). The undersigned subsequently ordered that Warden Sifuentes be substituted in place of Assistant Warden Furr. (D.E. 27).

On January 28, 2019, Warden Sifuentes filed a Motion for Summary Judgment. (D.E. 28). Plaintiff has filed a response along with a Statement of Genuine Disputes of Fact. (D.E. 31, 32).

### III. SUMMARY JUDGMENT EVIDENCE

Warden Sifuentes offers the following summary judgment evidence:

Exh. A: Affidavit of Warden Sifuentes with attached building schedules (D.E. 29-1).

Exh. B: Plaintiff's Relevant Medical Records (D.E. 28-1 through 28-7).

Exh. C: Affidavit of Dr. Isaac Kwarteng (D.E. 28-8).

Plaintiff, in turn, attached the following summary judgment evidence to his response and Statements of Genuine Disputes of Facts: (1) relevant medical records (D.E. 31-1, 31-2); (2) Affidavit of Michael McCann (D.E. 32-1); (2) Affidavit of Plaintiff (D.E. 32-2; and (3) Affidavit of Jerry Poling (D.E. 32-3). Plaintiff's verified complaint and testimony at the *Spears* hearing also may serve as competent summary judgment evidence. *See Garrett v. Davis*, No. 2:14-CV-70, 2017 WL 1044969, at *3 (S.D. Tex. Mar. 20, 2017). Like other parts of the record, Plaintiff's verified complaint and *Spears*-hearing testimony must satisfy Federal Rule of Civil Procedure 56(c) in order to be considered at summary judgment. *See Mengele v. AT&T Servs. Inc.*, No. 3:15-cv-3934,

2017 WL 3835871, at *3 (N.D. Tex. Aug. 9, 2017) ("[T]he verified complaint and sworn interrogatory answers of the *pro se* litigant can be considered as summary judgment evidence *to the extent that such pleadings comport with the requirements of current Rule 56(c).*") (emphasis added) (citations omitted).

The undersigned, therefore, will not consider parts of Plaintiff's verified complaint or *Spears*-hearing testimony that are not made on personal knowledge or that would be inadmissible in evidence. *See* Fed. R. Civ. P. 56(c)(4). Accordingly, the competent summary judgment evidence establishes the following:

A. **Plaintiff's Evidence**

(1) *Plaintiff's Verified Complaint and Spears-Hearing Testimony*

Plaintiff is a 49-year-old male and is 6'2" tall. He weighed 198 pounds at the time of the *Spears* hearing, which is down from his typical weight of 215 pounds. Plaintiff testified that his overall health has been declining. In addition to his weight issues, Plaintiff suffers from headaches, chest pains, bowel issues, and foot problems. Plaintiff, who has been diagnosed with Hepatitis C, describes his liver as aching.

Defendants have implemented a policy that forces Plaintiff to choose between getting either sleep or clean clothes. Under the policy, Plaintiff must awaken before 3:00 a.m. four days a week to attend the necessities exchange, which consists of getting new clothes or sheets. Plaintiff is then required to go to the dining facility for breakfast and return to his cell by 5:00 a.m. for a head count. On many days, Plaintiff must leave his cell around 7:00 a.m. for work in which he cleans showers around the unit. Plaintiff typically completes his morning shift by noon or 1:00 p.m. Plaintiff sometimes is

required to work the night shift, which begins at 10:00 p.m. and ends around 3:00 a.m. Other than work, Plaintiff spends time both in the law library and recreation areas.

Plaintiff believes that the time for the necessities exchange was changed from the early afternoon to 3:30 a.m. to punish prisoners and keep them sleep deprived. Plaintiff states that he is able to sleep uninterrupted only for about three to four hours per night. He requests at least six or seven hours of uninterrupted sleep per night. Plaintiff believes that Assistant Warden Furr has the authority to make the policy change at the McConnell Unit to allow him to sleep uninterrupted for his requested time.

Plaintiff has been told by his doctor that his lack of sufficient sleep has exacerbated his liver issues and caused other health concerns. Plaintiff testified that the combination of sleep deprivation and his prescribed medications has caused him to have body aches and to use the bathroom more frequently than would otherwise be normal.

### (2)  *Plaintiff's Medical Evidence and Affidavit Testimony*

In his affidavit, Plaintiff states that he receives clothes at the prison unit between "1300 hours to 0400 hours" and that his medical records detail his sleep problems. (D.E. 32-2). On January 10, 2019, Plaintiff was seen in the McConnell Unit's medical department. (D.E. 31-1 and 31-2). Plaintiff complained that he suffered from insomnia for about twenty-three years. (D.E. 31-1 and 31-2). He reported to medical staff that he suffers from headaches and that his eyes constantly hurt. (D.E. 31-2). Physician Assistant Erick Echavarry provided Plaintiff with information on insomnia to read. (D.E. 31-2).

Inmate Michael McCann stated in his affidavit that: (1) over the past few years, clothes are passed out at 4:00 a.m.; (2) inmate count time occurs at "1300 hours"; and (3) the building schedule was implemented to deny six hours of continuous sleep. (D.E. 32-1). Inmate Jerry Poling stated in his affidavit that he has to wake up at 3:00 a.m. to get his clothes. (D.E. 32-3). He further indicates that it is impossible for an inmate to sleep during the daytime due to the noise level. (D.E. 32-3).

### B. Warden Sifuentes' Evidence

#### *(1) Affidavit of Warden Sifuentes*

Warden Sifuentes testified in his affidavit that: (1) the 24-hour building schedule is a policy created by the TDCJ administration; (2) "[t]he 24-hour building scheduled is necessary to facilitate the many needs of offenders, such as daily medical appointments, job assignments, religious services, law library access, meal time, shower time, exchange of necessities, and family visitations for the roughly 2,800 offenders housed at the McConnell Unit"; (3) the 24-hour building schedule provides time for counts, such as the "bed book count," which is a physical count of offenders requiring both a verbal response and use of an identification card by offenders; (4) because Plaintiff is currently medically unassigned and has no work responsibilities, he is required to be awake during the "bed book count"; (5) because Plaintiff does not work a prison job, he is free to stay and sleep in his cell during the day; (6) prisoners turn in for the night at approximately 10:30 p.m. and are able to sleep until approximately 4:00 a.m.; (7) the unit's necessities exchange, when the inmates receive their clothing, towels, and linens, begins at 4:00 a.m.; and (8) this time of the necessities exchange "is extremely efficient in ensuring that clean, state

6 / 20

issue-clothing is exchanged quickly and benefits the most offenders." (D.E. 29-1, pp. 2-4).

According to Warden Martinez, "[t]he mission of the TDCJ would not be accomplished without the structure and implementation of the 24-hour building schedule," which, in turn, "helps to maintain a safe and secure environment for offenders and staff." (D.E. 29-1, p. 6). He further states that the American Correctional Association conducts an external audit every three years and that the McConnell Unit was found to be compliant in a September 2016 audit. (D.E. 29-1, p. 6).

### (2) Medical Evidence

Plaintiff is a medically unassigned G4 offender and is currently assigned to the chronic care clinic for hypertension. (D.E. 29-1, p. 4; 28-8, p. 2). While Plaintiff's blood pressure has fluctuated, it has been noted in his medical records that the reason for the fluctuations is due to non-compliance with prescribed medications. (D.E. 28-2, p. 93). In clinical notes dated May 10, 2018, it was reported that his hypertension was marginally controlled. (D.E. 28-1, p. 67). On November 26, 2018, Plaintiff complained to the medical department that his blood pressure medication was making him dizzy. (D.E. 28-7, p. 80).

Plaintiff has been seen on several occasions in the medical department for complaints of chest pain. (D.E. 28-7, pp. 25-26, 33, 53, 63, 85; 28-8, p. 4). Dr. Kwarteng, the Medical Director at the McConnell Unit, stated in his affidavit that the assessments by medical staff regarding Plaintiff's chest pains did not indicate any

emergent situations requiring higher levels of treatment for Plaintiff at a free world hospital. (D.E. 28-8, p. 4).

Medical records show that in August 2018, Plaintiff complained to the medical department that he was having trouble sleeping. (D.E. 28-7, pp. 38, 104). He requested sleep medication because security was waking him up too much. (D.E. 28-7, p. 38). The medical provider informed Plaintiff during an evaluation on August 8, 2018 that "UTMB does not provide sleep aides." (D.E. 28-7, p. 38). On November 2, 2018, Plaintiff complained to the medical department that he was having sleep problems due to lights. (D.E. 28-7, p. 29). He was found to be in no acute distress and referred to mental health. (D.E. 28-7, p. 29). On December 10, 2018, Plaintiff complained that his medications are interfering with his sleep habits. (D.E. 28-7, p. 99). He again reiterated that he has had difficulty falling asleep "for a very long time." (D.E. 28-7, p. 99).

Upon reviewing Plaintiff's medical records, Dr. Kwarteng stated that Plaintiff's weight has fluctuated somewhat throughout his time at the McConnell Unit. (D.E. 28-8, p. 4) On January 30, 2015, Plaintiff weighed 200 pounds. (D.E. 28-2, p. 101). On July 26, 2018, Plaintiff weighed 208 pounds. (D.E. 28-7, p. 39). Plaintiff has made no complaints to the medical department to suggest that bowel or foot problems have contributed to any of his sleep issues. (D.E. 28-8, pp. 4-5).

IV. **SUMMARY JUDGMENT STANDARD**

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence, or evaluate the credibility of witnesses. *Id.* Furthermore, affidavits or declarations "must be made on personal knowledge, [shall] set out facts that would be admissible in evidence, and [shall] show that the affiant or declarant is competent to testify to the matters stated." Fed. R. Civ. P. 56(c)(4); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing

that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." *Anderson*, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

## V. DISCUSSION

Plaintiff claims that prison officials acted with deliberate indifference to his health and safety by implementing a policy to require a necessities exchange at 3:30 a.m., thereby interfering in Plaintiff's ability to sleep. "The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (per curiam) (internal quotations omitted)).

Prison officials are required to provide humane conditions of confinement and ensure that inmates receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Hudson v. McMillian*, 503 U.S. 1, 8-10 (1992).

A constitutional violation under the Eighth Amendment occurs only when two requirements are met. "First, there is an objective requirement that the condition must be so serious as to deprive prisoners of the minimal civilized measure of life's necessities, as when it denies the prisoner some basic human need." *Woods*, 51 F.3d at 581 (internal quotations and citation omitted). To prove a constitutional violation, an inmate need not show that a death or serious injury already has occurred, but rather that there is a "substantial risk of serious harm." *Ball v. LeBlanc*, 792 F.3d 584, 593 (5th Cir. 2015) (citing *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004)). Because "sleep undoubtedly counts as one of life's basic needs," any "[c]onditions designed to prevent sleep . . . might violate the Eighth Amendment." *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999). *See also Walker v. Schult*, 717 F.3d 119, 126-28 (2d Cir. 2013) (concluding that sleep deprivation may deny prisoner of a minimal civilized measure of life's necessities).

"Second, under a subjective standard, [the court] must determine whether the prison official responsible was deliberately indifferent to inmate health and safety." *Woods*, 51 F.3d at 581 (internal quotations and citation omitted). Deliberate indifference is more than mere negligence. *Farmer*, 511 U.S. at 835. To act with deliberate

indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference.  *Id.* at 837.

Defendant Sifuentes contends in his summary judgment motion that Plaintiff has failed to satisfy both the objective and subjective components required to establish a deliberate indifference claim.  (D.E. 28, pp. 4-8).  He further contends that the 24-hour building schedule, which includes a necessities exchange at 4:00 a.m., is reasonably related to legitimate penological interests.  (D.E. 28, pp. 8-11).  Lastly, Defendant Sifuentes contends that Plaintiff is not entitled to injunctive relief because he lacks standing.  (D.E. 28, pp. 11-13).

Plaintiff responds that genuine issues of material facts exist as to whether: (1) Plaintiff requires six to eight hours of sleep; (2) Plaintiff's eight hours of sleep is a basic human need; (3) Plaintiff should not have to choose between sleep and clean clothes; and (4) the necessities exchange period is not related to a legitimate penological interest because prison officials could achieve duel goals of passing out clothes at a later time and letting prisoners sleep eight hours.  (D.E. 31, p. 2).

### A.  Substantial Risk of Serious Harm (Objective Test)

In *Garrett v. Davis*, No. 2:13-CV-70, 2019 WL 1233675 (S.D. Tex. Mar. 18, 2019), inmate Michael Garrett complained that the 24-hour building scheduled failed to provide him with an opportunity to sleep continuously for six hours, in violation of his Eighth Amendment rights.  *Id.* at 1.  The case proceeded to a bench trial.  The evidence

presented at trial established that (1) Garrett suffered from hypertension, kidney disease, and a seizure disorder; (2) Plaintiff received medications for his conditions; (3) Plaintiff had neither complained of nor been diagnosed with a seizure disorder; and (4) Plaintiff never complained of insomnia. *Id.* at *2. No evidence was presented to show that Plaintiff's lack of sleep caused his medical complaints. *Id.* at *2.

Garrett presented at trial the expert testimony from Candice Alfano, a licensed clinical psychologist who is a University Professor and the director of the Sleep Anxiety Center in Houston, Texas. *Id.* at 2. Professor Alfano opined at trial that, in accordance with guidelines set forth by the American Academy of Sleep Medicine and the National Sleep Foundation, seven hours of sleep per night is necessary for optimal health. *Id.*

After considering Professor Alfano's testimony and the studies upon which she relied, District Judge Nelva Gonzalez Ramos determined that the sleep guidelines were "designed to promote an aspirational goal" and not "establish the standard for a deprivation of a life necessity." *Id.* Judge Ramos concluded that conditions which are designed to promote safety and efficiency for housing large numbers of prisoners, but which limit or interrupt continuous hours of sleeping, do not necessarily violate the Eighth Amendment where sleep is not prohibited. *Id.* at 2. Thus, upon consideration of Professor Alfano's testimony and the lack of evidence showing that insufficient sleep has caused his various medical complaints, Judge Ramos concluded that Garrett had failed to sustain his burden to show that his sleep schedule posed a substantial risk of serious harm. *Id.* at *3.

In this case, the competent summary judgment evidence establishes that: (1) Plaintiff suffers from both hypertension and Hepatitis C; (2) Plaintiff has recently suffered from chest pains, headaches, bowel issues, and foot problems; (3) Plaintiff has been prescribed numerous medications for his medical issues; and (4) from January 30, 2015, Plaintiff's weight has fluctuated from 198 pounds to as high as 215 pounds. Plaintiff testified at the *Spears* hearing that his overall health has been declining. Dr. Kwarteng, however, confirmed that, based on his review of Plaintiff's medical records, Plaintiff's hypertension is controlled whenever he takes his medications, that his complaints of chest pain have not led to emergent situations requiring care at an outside hospital, that his weight fluctuations have not been substantial, and that his bowel and foot issues are not caused by lack of sleep. (D.E. 28-8).

The objective medical evidence presented shows that Plaintiff began to complain to the medical department about having trouble sleeping in August 2018. (D.E. 28-7, pp. 38, 104). He further complained about sleep issues on November 2, 2019, December 10, 2018, and January 10, 2019. (D.E. 28-7, pp. 29, 99; D.E. 31-1 and 31-2). Plaintiff provided several different reasons as the cause of his insomnia, consisting of security waking him up, the lights, and his medications. (D.E. 28-7, pp. 29, 99). Plaintiff further stated that he has suffered from insomnia for about twenty-three years. (D.E. 31-1 and 31-2).

In his verified complaint and testimony at the *Spears* hearing, Plaintiff states that a doctor informed him that his lack of sufficient sleep has exacerbated his liver issues and caused other health concerns. He further testified that the combination of sleep

14 / 20

deprivation and his prescribed medications caused him to have body aches and to use the bathroom more frequently than would otherwise be normal. Although his sworn § 1983 complaint and testimony at the *Spears* hearing are proper summary judgment evidence, Plaintiff must as the party with the burden of proof identify genuine issues of material fact to avoid summary judgment in movant's favor. *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). Plaintiff, however, has come forward with no evidence in connection with the summary judgment motion to establish a genuine issue of material fact as to whether his alleged sleep deprivation has posed a substantial risk of serious harm.

This Court held in *Garrett* that aspiration goals of six or more continuous hours of sleep per night fail to establish the standard for the deprivation of one of life's basic needs. *See Garrett*, 2019 WL 1233675, at *2. Plaintiff has not offered any evidence in this case otherwise to show that six continuous hours of sleep should be the standard for a deprivation of a life necessity. The competent summary judgment evidence presented reflects that Plaintiff may sleep several hours uninterrupted at night before having to exchange his clothes at 4:00 a.m. and has the ability to sleep during the day in his cell. While he has complained recently of suffering from insomnia, a condition which he has suffered about twenty-three years, nothing has been presented in the record to show that his lack of uninterrupted six hours of sleep has caused or exacerbated his various medical issues. The objective medical evidence further shows that Plaintiff has never been diagnosed with a sleep-related illness. (*See* D.E. 28-1 through 28-8).

Thus, even when viewing the evidence in a light most favorable to Plaintiff, he has failed to establish a genuine issue of material fact with respect to whether his lack of continuous sleep due to the building schedule's 4:00 a.m. necessities exchange poses a substantial risk of serious harm. For this reason, the undersigned respectfully recommends that Warden Sifuentes' summary judgment motion (D.E. 28) be **GRANTED**.

### B. Deliberate Indifference (Subjective Test)

Even if the interruption of Plaintiff's continuous sleep caused by the 4:00 a.m. necessities exchange posed a substantial risk of serious harm, he has failed to demonstrate any fact issues as to the subjective prong of the deliberate indifference test. In an unpublished decision, the Fifth Circuit in *Walker v. Nunn*, 456 F. App'x 419 (5th Cir. 2011), considered the prisoner's Eighth Amendment claim of inadequate sleep due to the prison schedule, prison noise, and staff misconduct. *Id.* at. 422. The Fifth Circuit affirmed the dismissal of his sleep deprivation claims at the summary judgment stage.

First, the Fifth Circuit determined that "[t[he structure of the [24 hour] prison, hourly ingresses, and egresses, intercom announcements, and daily counts were reasonably related to legitimate penological interests." *Id.* at 423. The court further based its conclusion on: (1) the lack of evidence that the named defendants acted with deliberate indifference to the risk of inadequate sleep; and (2) the fact the defendant could not be held liable for the acts of the subordinate prison officials because the plaintiff had not demonstrated the elements of a failure-to-supervise claim. *Id.* at 423-24.

The competent summary judgment evidence presented in this case establishes that: (1) the TDCJ's 24-hour building scheduled is necessary to facilitate the many needs of offenders, such as daily medical appointments, job assignments, and exchange of necessities for the roughly 2,800 offenders housed at the McConnell Unit"; (2) the 24-hour building schedule provides time for counts throughout the day, such as the "bed book count," which is a physical count of offenders requiring both a verbal response and use of an identification card by offenders; (3) because Plaintiff is currently medically unassigned and has no work responsibilities, he is required to be awake during the "bed book count"; (4) because Plaintiff does not work a prison job, he is free to stay and sleep in his cell during the day; (5) prisoners turn in for the night at approximately 10:30 p.m. and are able to sleep until approximately 4:00 a.m.; (6) the unit's necessities exchange, when the inmates receive their clothing, towels, and linens, begins at 4:00 a.m.; (7) this time of the necessities exchange "is extremely efficient in ensuring that clean, state issue-clothing is exchanged quickly and benefits the most offenders"; and (8) the structure and implementation of the 24-hour building schedule helps maintain a safe and secure environment for offenders  (D.E. 29-1, pp. 2-4).

Warden Sifuentes has satisfied his burden in showing that the 24-hour building schedule is related to legitimate penological interests.  *See Walker*, 456 F. App'x at 422 (citing *Talib v. Gilley*, 138 F.3d 211, 214 (5th Cir. 1998)).  Plaintiff does not believe that the policy is related to a legitimate penological interest and asks that the clothing exchange be moved to 1:00 p.m.  (D.E. 32, p. 1).  However, he provides no specific

argument or evidentiary support to justify why this would be a valid alternative change to the 24-hour building schedule already set.

Notwithstanding any interruption to his sleep due to having to awake for the 4:00 a.m. clothing exchange, Plaintiff has failed to establish a fact issue as to whether he was exposed to an excessive risk to his health due to the 24-hour building schedule or that any McConnell Unit prison official were aware of that inference and had actually drawn that inference. When Plaintiff complained to the medical department about having trouble sleeping, he blamed various sources other than having to arise early for the 4:00 a.m. necessities exchange. He further acknowledged that he had suffered from insomnia for about twenty-three years. Thus, his complaints about having trouble sleeping did not arise due to having to exchange his clothes at 4:00 a.m. under the 24-hour building schedule. Furthermore, as discussed above, no evidence has been presented to indicate that Plaintiff suffered from a sleep-related medical disorder or that his current medical issues were adversely impacted by his lack of sleep.

Thus, even when viewing the evidence in a light most favorable to Plaintiff, he has failed to establish a genuine issue of material fact with respect to whether Warden Sifuentes acted with deliberate indifference to his serious medical needs by way of enforcing the 24-hour building schedule which required Plaintiff to exchange his clothes at 4:00 a.m. For this reason as well, the undersigned respectfully recommends that Warden Sifuentes' summary judgment motion (D.E. 28) be **GRANTED**.

## VI.     RECOMMENDATION

The competent summary judgment evidence establishes that Plaintiff's Eighth Amendment claims related to his allegations of sleep deprivation are subject to dismissal. Thus, it is respectfully recommended that Warden Sifuentes' Motion for Summary Judgment (D.E. 28) be **GRANTED** and that Plaintiff's deliberate indifference claims against Warden Sifuentes in his official capacity for injunctive relief be **DISMISSED with prejudice**.

Respectfully submitted this 6th day of June 2019.

Jason B. Libby
United States Magistrate Judge

## **NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).